**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Juan Carlos R.R.,

                Petitioner,

v.

Pamela Bondi, *Attorney General of the United States*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; U.S. Department of Homeland Security; Todd M. Lyons*, Acting Director of Immigration and Customs Enforcement*; U.S. Immigration and Customers Enforcement; and David Easterwood*, Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

                Respondents.

Case No. 26-cv-1282 (MJD/DJF)

**REPORT AND
RECOMMENDATION**

---

This matter is before the Court on Petitioner Juan Carlos R.R.'s[1] *Verified Petition for Writ of Habeas Corpus* (ECF No. 1) ("Petition").  Juan Carlos seeks an order for his immediate release from immigration detention, or in the alternative, an order for a bond hearing.  For the reasons stated below, the Court recommends that the Petition be granted in part and that Respondents be ordered to provide him with a bond hearing.

**BACKGROUND**

Juan Carlos is a citizen of Cuba, who fled that country to seek asylum in the United States.  (ECF No. 1 at 3.)  Juan Carlos did not cross the United States border illegally.  Instead, upon entering the United States with his wife and two children on August 1, 2024, Juan Carlos presented to U.S. Customs and Border Protection ("CBP") in San Ysidro, California for a previously scheduled

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in immigration matters.

appointment.  (*Id.*)  CBP charged Juan Carlos as removable under 8 U.S.C. § 212(a)(7)(A)(i)(I) as "an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act" (ECF No. 7-1; ECF No. 7-2 at 5-7) and gave him a notice to appear before an immigration judge on October 13, 2026 (ECF No. 7-1).  But rather than detain Juan Carlos and his family, CBP paroled them, granting them permission to remain into the United States until July 31, 2026.  (ECF No. 1 at 3, 6; ECF No. 7-2 at 7.)  CBP also granted Juan Carlos a work permit with the same expiration date.  (ECF No. 1 at 3, 6.)  In January 2026, Juan Carlos filed applications for asylum and withholding of removal under the Convention Against Torture, which remain pending.  (*Id.* at 3.)  He states that he did not apply for asylum sooner because he paid a man to assist him with his application and the man defrauded him.  (*Id.* at 5.)

Since his arrival in the United States, Juan Carlos has built a life here.  He lives in St. Paul, Minnesota with his family, including his wife and two children, aged fourteen and six.  (*Id*. at 3.)  He works as a DoorDash delivery driver, providing for his family and saving to pay for legal assistance.  (*Id*. at 5.)  Juan Carlos has not been convicted of any crime and has not received any formal written notice revoking his parole.  (*Id*. at 6.)

On December 21, 2025, United States Immigration and Customs Enforcement ("ICE") officers approached Juan Carlos as he started his car to begin a DoorDash work shift and demanded that he exit the vehicle.  (*Id*. at 5.)  According to Juan Carlos, the officers were masked and armed, and he did not know they were ICE officers.  (*Id.*)  Juan Carlos attempted to drive away.  (*Id*.)  He states that the ICE officers fired multiple shots into his car before they violently arrested him.  (*Id*.)  According to a Department of Homeland Security report regarding the incident, while Juan Carlos was attempting to flee, he hit two parked cars with his vehicle and struck an ICE officer with his vehicle.  (ECF No. 7-2 at 3.)

On December 30, 2025, the government indicted Juan Carlos with two felony counts of Assault on a Federal Officer with a Dangerous Weapon, and one felony count of Assault on a Federal Officer, each count arising under 18 U.S.C. § 111(a) and (b). *United States v. Juan Carlos R.R.*, No. 25-cr-497 (PAM/ECW) (D. Minn.) ("*Juan Carlos I*") (ECF No. 1). On January 8, 2026, Juan Carlos appeared before the undersigned Magistrate Judge in his criminal case for an arraignment and detention hearing and was released on conditions, including pretrial supervision. (*Id.*, ECF Nos. 13, 14, 15, 16.) Immediately after the Court released Juan Carlos, while he was still in the Minneapolis courthouse, ICE officers re-detained him and transferred him back to the Sherburne County Jail where he had been detained in the criminal matter. (ECF No. 1 at 6.) Juan Carlos states the ICE officers did not present him with an administrative warrant for this second arrest (ECF No.1 at 6), and Respondents have not produced one. District Judge Paul A Magneson entered an order in the criminal case on January 27, 2026, which prohibits ICE from removing Juan Carlos from the District of Minnesota while his criminal case is pending. *Juan Carlos I* (ECF No. 24).

Juan Carlos filed his Petition on February 10, 2026 to challenge his ongoing detention at the Sherburne County Jail. (ECF No. 1.) The Petition asks the Court to issue a writ of habeas corpus ordering Respondents to release him immediately, without restraints on his liberty other than the conditions of release previously ordered in his criminal case. The Petition requests, in the alternative, an order directing Respondents to provide him with a bond hearing. (ECF No. 1 at 30.)

## DISCUSSION

Respondents contend that Juan Carlos is subject to mandatory detention under three different statutory provisions: (1.) 8 U.S.C. § 1225(b); (2.) 8 U.S.C. § 1231(c); and (3.) 8 U.S.C. § 1226(c) (the "Laken Riley Act"). (ECF No. 5.) Juan Carlos argues none of these provisions apply to him.

3

Though the Court concludes that Section 1225(b) and Section 1231(c) are inapplicable to Juan Carlos, the Court agrees with Respondents that the Laken Riley Act requires mandatory detention in light of the criminal indictment against him.  However, Juan Carlos also challenges the Laken Riley Act as unconstitutional under the Due Process Clause insofar as it mandates his detention without a bond hearing based solely on criminal charges, without a conviction.  Because the Court agrees that, under the present circumstances, detaining Juan Carlos without a bond hearing based solely on the criminal charges offends basic notions of due process, the Court recommends the Petition be granted in part and that Respondents be ordered to provide him with an administrative bond hearing.

## I.      8 U.S.C. § 1225(b)

Respondents state in passing that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), but they proffer no argument as to why they believe that statute applies.  (*See* ECF No. 5 at 1, citing Section 1225(b) once without follow-up.)  Respondents' failure to develop this claim is alone reason to reject it as effectively waived.  Moreover, to the extent Respondents intend to argue Section 1225(b) as a basis for detention, this is one of numerous recent cases in which Respondents have sought to apply 8 U.S.C. § 1225(b)(2) to noncitizens who are detained after living in the United States for many months, years, and sometimes decades, based on Respondents' recent and novel reinterpretation of the law that is unsupported by any congressional mandate.  Judge Davis has previously held that, because such individuals are not "seeking admission," *see* 8 U.S.C. 1225(b)(2), that provision does not apply to them.  *See Beltran v. Bondi*, 25-cv-4604 (MJD/DTS), 2025 WL 3719856 (D. Minn. Dec. 23, 2025); *see also Bashir K.A. v. Klang*, No. 25-cv-4559 (KMM/DJF) (D. Minn. Feb. 17, 2026) (ECF No. 25) (concluding that Section 1225(b) does not apply to a person who is initially charged at the U.S. border as inadmissible under 8 U.S.C. 1182(a), paroled, and then detained years later).  Because CBP paroled Juan Carlos and gave him explicit authorization to

remain in the United States until July 31, 2026, Section 1225(b)(2) does not establish a basis for Respondents to detain him without a bond hearing.

## II.   8 U.S.C. § 1231(c)

Respondents also state that Juan Carlos is subject to mandatory detention under 8 U.S.C. §1231(c). (ECF No. 5 at 1.)  This claim is similarly waived by Respondents' failure to develop it. Moreover, such development is especially necessary because Section 1231(c) appears to be wholly inapposite.  Section 1231(c) applies to the removal of "alien[s] arriving at a port of entry of the United States who [are]ordered removed either without a hearing under [8 U.S.C. § 1225(b)(1) or 8 U.S.C. §1225(c)] … or pursuant to proceedings under [8 U.S.C. § 1229a]".  The federal courthouse in downtown Minneapolis, where ICE arrested Juan Carlos, is plainly not a port of entry of the United States.  Nor is Juan Carlos subject to removal under 8 U.S.C. § 1225(b) (as discussed above), 8 U.S.C. § 1225(c) (aliens inadmissible on security grounds), or 8 U.S.C. § 1229a (which requires a removal order from an immigration judge).  Section 1231(c) is inapplicable to Juan Carlos' detention for these reasons.

## III.   8 U.S.C. § 1226(c)

Aside from Respondents' passing citations to Section 1225(b) and 1231(c), the thrust of their argument is that Juan Carlos must be detained under the Laken Riley Act, 8 U.S.C. § 1226(c).  (ECF No. 1 at 2-3.)  Respondents specifically contend that Juan Carlos is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(E) because: (1.) CBP charged him as inadmissible under 8 U.S.C. § 1182(a)(7); and (2.) he was indicted on charges of assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1) and (b).

Section 1226(c) provides for the mandatory detention of noncitizens convicted of certain enumerated criminal offenses.  On January 29, 2025, Congress amended Section 1226(c) when it

enacted the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).  The Laken Riley Act expanded the list of enumerated criminal offenses to which mandatory detention applies.  The additions include mandatory detention for any noncitizen who: (1.) is deemed inadmissible under 8 U.S.C. § 1182(a)(6)(A), (6)(C), or (7), *see* 8 U.S.C. § 1226(c)(1)(E)(i); and (2.) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person," 8 U.S.C. § 1226(c)(1)(E)(ii).

Juan Carlos argues Section 1226(c)(1)(E) does not mandate his detention because: (1.) he does not fall within the categories of inadmissible noncitizens to which Section 1226(c)(1)(E)(i) applies (*see* ECF No. 1 at 18); (2.) his conduct does not fall within the offenses triggering mandatory detention under Section 1226(c)(1)(E)(ii) (*see* ECF No. 8 at 10-11); and (3.) as applied, Section 1226(c)(1)(E) violates his due process rights (*see id.* at 4-19).  For the reasons discussed below, the Court concludes both requirements of Section 1226(c)(1)(E) are met and the Laken Riley Act mandates that Juan Carlos be detained.  The Court further concludes, however, that under the circumstances presented, Respondents' continued detention of Juan Carlos without a bond hearing violates his right to procedural due process.

### A.      8 U.S.C. § 1226(c)(1)(E)(i)

Juan Carlos argues the Laken Riley Act's first requirement, Section 1226(c)(1)(E)(i), does not apply to him because "he does not fit within the three categories of inadmissible non-citizens for whom the criminal charge requires mandatory detention." (ECF No. 1 at 18.)  In advancing this argument, Juan Carlos cites 8 U.S.C. § 1182(a)(6)(A) (presence without admission or parole), 8 U.S.C. § 1182(a)(6)(B) (failure to attend removal proceedings), and 8 U.S.C. § 1182(a)(6)(C)

(misrepresentation to obtain admission or other benefits), and asserts that none of these provisions apply to him.  This argument misreads the plain text of Section 1226(c)(1)(E)(i), which also applies to noncitizens charged as inadmissible under 8 U.S.C. § 1182(a)(7).  As relevant here, Section 1182(a)(7) deems inadmissible any immigrant who, at the time of his application for admission, "is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document."  8 U.S.C. § 1182(a)(7)(A)(i)(I).  Juan Carlos does not allege he possessed valid entry documents when he appeared for his appointment at the point of entry on August 1, 2024.  Moreover, when the CBP first charged Juan Carlos as removable, it charged him under 8 U.S.C. § 1182(a)(7)(A)(i)(I) (INA § 212(a)(7)(A)(i)(I)) as "an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document."  (ECF No. 7-1 at 4.)  The first requirement of the Laken Riley Act, 8 U.S.C. § 1226(c)(1)(E)(i), therefore plainly applies to Juan Carlos.[2]

### B.  8 U.S.C. § 1226(c)(1)(E)(ii)

Juan Carlos argues the Laken Riley Act's second requirement, Section 1226(c)(1)(E)(ii), does not apply to him because the criminal statute under which he was charged encompasses lesser offenses to which Section 1226(c)(1)(E)(ii) does not apply.  (ECF No. 8 at 9-10.)  In advancing this argument, Juan Carlos again ignores the most relevant provision of the applicable statute.  The relevant text of Section 1226(c)(1)(E)(ii) requires mandatory detention of noncitizens who are "charged with … assault of a law enforcement officer."  Juan Carlos notes that he was indicted under 18 U.S.C. § 111(a)(1), which establishes criminal liability for anyone who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" any officer of the United States government who is

---

[2] Juan Carlos appears to have abandoned this argument after Respondents produced proof that he was charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I).  (*See* ECF No. 8.)  The Court nevertheless addresses it in the interest of completeness.

"engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1); *see also* 18 U.S.C. § 1114(a) (defining officers protected under Section 111(a)(1)). As Juan Carlos points out, the conduct prohibited under 18 U.S.C. § 111(a)(1) includes "resist[ing], oppos[ing], imped[ing], intimidat[ing], and [interfer]ing" with federal officers—none of which equate to the mandatory detention triggering offense of "assault."

This logic is sound, as far as it goes, but the government did not simply charge Juan Carlos under 18 U.S.C. § 111(a)(1); he was also indicted under 18 U.S.C. § 111(b). Section 111(b) establishes an enhanced penalty for anyone charged under Section 111(a)(1) who "uses a deadly or dangerous weapon… or inflicts bodily injury" to engage in an act prohibited under Section 111(a)(1). And though a person might use a deadly weapon to resist or interfere with federal law enforcement officers without making physical contact or harming them, physical contact is not required to commit an actionable "assault" under 18 U.S.C. § 111. *See* Model Crim. Jury Instr. 8th Cir. 6.18.111 (2026) (defining "assault" to include an "attempt or threat to do injury to the person of another, when coupled with the apparent present ability to do so" and stating that "actual physical contact is not required"). Finally, the indictment against Juan Carlos does not merely accuse Juan Carlos of resisting federal law enforcement officers or even threatening them with bodily harm; it alleges he "caused physical contact and inflicted bodily injury with a dangerous weapon." *Juan Carlos I* (ECF No. 1). The Court therefore finds that the specific conduct charged in Juan Carlos's criminal case constitutes "assault" within the meaning of 8 U.S.C. § 1226(c)(1)(E)(ii), and furthermore, assault is encompassed under any plausible reading of the enhanced penalty provision, 18 U.S.C. § 111(b), under which he was indicted. For these reasons, the Court concludes that Juan Carlos is subject to mandatory detention under the Laken Riley Act, 8 U.S.C. § 1226(c)(1)(E).

8

### C.   Due Process

Having found that the Laken Riley Act mandates detention in this case, the Court must grapple with the thorny constitutional question Juan Carlos raises: whether applying that statute to Juan Carlos under the present circumstances violates his right to procedural due process under the Fifth Amendment to the United States Constitution.  Because Juan Carlos is lawfully present in the United States, he is not subject to a final order of removal, and the sole ground for his detention is his indictment for a crime with which he has not been convicted, the Court concludes that it does.

The United States Supreme Court established the factors courts must consider in evaluating a procedural due process challenge in its landmark decision, *Mathews v. Eldridge*, 424 U.S. 319 (1976).  The Court in *Mathews v. Eldridge* held that:

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

The first of these factors weighs heavily in favor of Juan Carlos.  The private interest he seeks to advance is "the most elemental of liberty interests—the interest in being free from physical detention[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  CBP granted Juan Carlos parole and the right to work here until at least July 31, 2026.  He has exercised those rights by establishing a life in Minnesota with his wife and two children, who rely on him as the sole source of household income.  (ECF No. 1 at 7.)  When Respondents arrested him, they summarily took away his right to work, to support his family, and to exercise his personal freedom.

9

The deprivation of such rights warrants due process.

Moreover, the risk of an erroneous deprivation of Juan Carlos's liberty is especially high in this case. Juan Carlos has not been convicted of any crime, and the Court must operate under the presumption that a defendant is innocent until proven guilty. *See Coffin v. United States*, 156 U.S. 432 (1895) (recognizing the presumption of innocence). This bedrock principle of criminal jurisprudence is of particular significance here, because it is far from predictable that Juan Carlos's arrest and indictment will result in a conviction on charges that trigger the Laken Riley Act. In the past few months, the District of Minnesota has witnessed an unprecedented pattern of criminal charges against defendants under the same statute, 18 U.S.C. § 111, that have ended in dismissals.

In *United States v. Aljorna*, the government charged two immigrants with assault of a federal officer in violation of 18 U.S.C. § 111(a) after the officer shot one of the two men in the leg following a vehicle chase. No. 26-mj-23 (PAM/DLM) (D. Minn.). Like Juan Carlos, both men were released on conditions in the criminal case, *see id.* (ECF No. 20), only to be immediately re-detained by ICE agents before they left the federal courthouse. *See* Sawyer, L., *Two Venezuelans, charged with assaulting agents in ICE shooting, re-detained despite judge's orders*, The Minnesota Star Tribune (Feb. 4, 2024), *available at* https://www.startribune.com/mn-venezuelans-released-iceshooting/601576035. The government vigorously challenged the Magistrate Judge's decision to release the men, *Aljorna*, No. 26-mj-23 (ECF No. 24), but suddenly dropped the charges three weeks later, on February 12, 2026, after discovering "evidence … materially inconsistent with the allegations in the Complaint affidavit … as well as preliminary-hearing testimony." *Aljorna*, No. 26-mj-23 (ECF No. 48).

The *Aljorna* dismissal was not isolated. On February 19, 2026, the government suddenly dismissed its case against another defendant charged under Section 111(a) without explanation. *See*

*United States v. Tschida*, No. 26-mj-54 (JNE/ECW) (D. Minn.) (ECF No. 27).  On January 26, 2026, the government moved to dismiss yet another case under Section 111(a) after it failed to present any witness to support the charge at a probable cause hearing.  *See United States v. Espinoza-Espinoza*, No. 26-mj-00030 (LIB) (D. Minn.) (ECF No. 10).  And on February 17, 2026, the court dismissed the case against another defendant charged under Section 111(a) after the government failed to timely file an indictment.  *See United States v. Collyard*, No. 25-mj-854 (DWF/DTS) (D. Minn.) (ECF No. 26).  In dismissing the case with prejudice, the court noted that the government did not even attempt to present the case to a grand jury and further found that "the evidence that an assault occurred at all is weak" and "the allegations are vague and contradictory."  *Id.*

Finally, the Court notes that the government recently charged a series of cases by complaint as felonies under 18 U.S.C. § 111(a) and 111(b), but later reduced them in seriousness when it quietly recharged them by information as misdemeanors under Section 111(a) without the enhanced penalty under Section 111(b).[3]  *See, e.g. United States v. Johnson,* No. 26-mj-81 (KMM/SGE) (D. Minn. Feb. 11, 2026) (ECF No. 20); *United States v. Etherington,* No. 26-mj-58 (NEB/DTS) (D. Minn. Feb. 3, 2026) (ECF No. 14); *United States v. Noor*, 26-mj-62 (NEB/LIB) (D. Minn. Feb. 11, 2026) (ECF No. 22).  In reducing the charges in these cases, the government implicitly conceded that the grounds for enhancement under Section 111(b) were meritless.  A similar reduction of the charges in Juan Carlos's criminal case might cause the Court to reconsider its determination that he is charged with an "assault" such that the Laken Riley Act mandates his detention.

Respondents' primary rebuttal to Juan Carlos's due process claim is that ICE agents prepared a report regarding his arrest "which does not mention officers firing their weapons at [Juan Carlos]

---

[3] The resulting reduction in seriousness is dramatic.  A defendant charged under the Section 111(b) enhanced penalty provision faces a potential maximum sentence of up to 20 years of imprisonment.  *See* 18 U.S.C. § 111(b).  A Class A misdemeanor count under Section 111(a)(1)

or his vehicle," and that the Court should regard that report as "inherently trustworthy." (ECF No. 5 at 2 and n.1; ECF No. 7-2 at 2-4.) However, the above cited cases raise significant doubt about the "presumption of regularity" typically afforded to the government under *United States v. Kouba*, 822 F.2d 768, 774 (8th Cir. 1987), both as to government's prosecution of these cases and the credibility of ICE agents' accounts leading to the charges. Given the startling pattern of dropped or reduced charges, inconsistent evidence, and outright false information proffered to support federal officer assault cases in this District recently, the Court finds there is a significant risk that Juan Carlos's detention will result in an erroneous deprivation of his rights.

The final factor under *Matthews*, the government's interest, does not weigh significantly in favor of detention without a bond hearing. Though the government undoubtedly has a strong interest in protecting the community and ensuring Juan Carlos does not become a flight risk while his criminal case proceeds, *see Demore v. Kim*, 538 U.S. 510, 518-19 (2003), this Court previously assessed the same factors in ordering his release on conditions in that case. *Juan Carlos I* (ECF No. 15). The Court then found, and continues to find, that his release on conditions will sufficiently mitigate any such risks.

The balance of factors thus weighs in favor of Juan Carlos. For these reasons, the Court concludes that in mandating detention without the possibility of bond, the Laken Riley Act, 8 U.S.C. § 1226(c)(1)(E), as applied to Juan Carlos, violates his constitutional right to procedural due process.

The Court does not reach this conclusion lightly, and acknowledges that under binding case precedent, noncitizens' due process rights in this country are not commensurate with the rights of United States citizens. *See Demore,* 538 U.S. at 522 ("Congress may make rules as to aliens that would be unacceptable if applied to citizens."). But immigrants such as Juan Carlos do have due

---

without the penalty enhancement may yield, at most, a year of imprisonment. *See* 18 U.S.C. § 3559.

12

process rights.  In *Zadvydas v. Davis*, the Supreme Court held that the Due Process Clause of the Fifth Amendments "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  533 U.S. 678, 693 (2001).  The Court concludes that such due process must provide, at a minimum, that an individual such as Juan Carlos, who is lawfully present in the United States and under no order of removal, cannot be divested of his freedom summarily based solely on unproven criminal charges, especially at a time such as this, when such charges repeatedly have been shown in similar cases to rest on dubious allegations.

The Court further acknowledges that the mandatory detention provisions of 8 U.S.C. § 1226(c) have survived due process challenges in the past.  In *Demore*, a petitioner who was convicted on burglary and theft charges argued his detention under Section 1226(c) without a bond hearing violated his due process rights.  538 U.S. at 518.  In rejecting the petitioner's due process challenge, the Supreme Court cited the "brief period [of detention] necessary for his removal proceedings", a more than 20% rate of failures to appear for removal hearings among deportable criminal aliens, and prior holdings that "[d]etention during removal proceedings is a constitutionally permissible part of that process."  *Id*. at 531.

More recently, the Eighth Circuit addressed whether a petitioner's year-long detention under Section 1226(c) violated due process insofar as it exceeded the "brief period" necessary for removal approved in *Demore*.  *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024).  The petitioner in *Banyee* had been convicted of robbery with a dangerous weapon.  *Id*. at 930.  Based on that conviction, an immigration judge ordered him removed on the ground that he had committed an "aggravated felony."  *Id.*  A series of appeals followed, during which the petitioner remained in detention for an entire year while his immigration case remained pending.  *Id.*  He then filed a habeas corpus petition, and the district court held he was entitled to a bond hearing given the length

13

of his detention.  *Id.* at 930-931.  The government appealed that decision and the Eighth Circuit reversed.  In doing so, the court declined to apply any form of multi-factor reasonableness test, holding instead that "[d]ue process imposes no time limit on detention pending deportation."  *Id*. at 930, 933.

*Demore* and *Banyee* are radically different from this case, however.  Unlike Juan Carlos, the petitioners in both of those cases stood *convicted* of predicate crimes triggering mandatory detention under Section 1226(c).  *See Demore*, 538 U.S. at 513 (noting the petitioner did not "dispute the validity of his prior convictions, which were obtained following the full procedural protections our criminal justice system offers."); *Banyee*, 115 F.4th at 930.  Indeed, both cases predated the passage of the Lakin Riley Act, and therefore, neither court even considered the constitutionality of detaining an immigrant indefinitely based solely on unproven charges in a criminal case.

This distinction matters a great deal.  In reaching its decision in *Banyee*, the Eighth Circuit held that "nothing suggests that length determines legality.  To the contrary, what matters is that detention pending deportation *has a definite termination point*—deporting or releasing the alien." *Banyee*, 115 F.4th at 932 (cleaned up) (emphasis added).  Here, in contrast, Juan Carlos's detention has no definite termination point.  Juan Carlos is not presently detained pursuant to an order of removal or pending the resolution of ongoing immigration proceedings.  Nor is his detention limited by the outcome of his criminal case.  Because the Lakin Riley Act provides for mandatory detention based solely on the fact that he was *charged* with a predicate crime, it would permit Respondents to keep him detained indefinitely, *even if he is acquitted of that crime* or the government voluntarily dismisses the charges because, as in *Aljorna*, it admits the ICE officers' affidavits supporting the charges against him are false.  The court's justification for upholding the detention in *Banyee* thus does not apply to this case.

14

Finally, the Court observes that courts in other jurisdictions have held the Laken Riley Act violates the Due Process Clause to the extent that it mandates detention based solely on criminal accusations without convictions. *See Doe v. Moniz*, 800 F. Supp. 3d 203, 213 (D. Mass. 2025) (finding petitioner detained under Section 1226(c)(1)(E) after shoplifting arrest entitled to bond hearing); *Veletanga v. Noemi*, No. 25-cv-9211 (NSR), 2025 WL 3751865, at *1 (S.D.N.Y. Dec. 26, 2025) (finding petitioner arrested and charged with felonies but convicted of misdemeanor entitled to bond hearing); *Rueda Torres v. Francis*, No. 25-cv-8408 (DEH), 2025 WL 3168759 at *6 (S.D.N.Y. Nov. 13, 2025) (detention under Section 1226(c) based on arrest violated due process when charges were later dropped); *S.E. v. Noem*, No. 26-cv-00356 (DAD/SCR), 2026 WL 206085, at *3 (E.D. Cal. Jan. 27, 2026) (petitioner detained under Section 1226(c)(1)(E) pursuant to arrest entitled to bond hearing when government declined to prosecute charges); *E.C. v. Noem*, No. 25-cv-01789 (RFB/BNW), 2025 WL 2916264, at *9 (D. Nev. Oct. 14, 2025) (petitioner entitled to bond hearing after he was arrested, charged, tried and acquitted). The Court joins these other courts and finds Juan Carlos's continued detention without a bond hearing, based solely on the unproven criminal charges against him, violates his right to procedural due process under the Fifth Amendment.

### CONCLUSION

For the foregoing reasons, the Court recommends his Petition be granted in part. The Petition requests immediate release, or in the alternative, a bond hearing. The Court recommends a bond hearing, as opposed to immediate release, because the basis for its decision is that Juan Carlos was denied procedural due process. The appropriate cure for such a deprivation is to provide him with the process he is owed.

Given the expedited nature of these proceedings, the Court is altering the standard timelines for Respondents to file objections to the recommendation that the Petition be granted. *See* L.R.

72.2(b)(1) ("A party may file and serve specific written objections to a Magistrate Judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, *unless the court sets a different deadline*.") (emphasis added).  Respondents must file any objection to this Court's recommendation on or before **February 25, 2026**.  Juan Carlos may file a response to any objections on or before **February 26, 2026**.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.      Petitioner Juan Carlos R.R.'s *Verified Petition for Writ of Habeas Corpus* (ECF No. 1) be **GRANTED IN PART** and **DENIED IN PART**.

2.      Respondents be ordered:

> A.      To provide Petitioner with bond hearing no later than 5 days after an Order adopting this Report and Recommendation.

> B.      That any decision to retain Petitioner in custody following the bond period must set forth the reasons for his continued detention.

3.      Respondents be ordered that, should the bond hearing result in Petitioner's release, they must release Petitioner from custody:

> A.      Inside the State of Minnesota;

> B.      At a safe time and place communicated in advance to counsel; and

> C.      With **_all_** of Petitioner's personal effects in Respondents' possession, such as driver's license, immigration papers, passport, cell phone, and keys.

4.        If the Petition is granted, Petitioner be directed that any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within **21 days** of entry of judgment, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted under that statute.

5.        The remainder of Petitioner Juan Carlos R.R.'s Petition be **DENIED WITHOUT PREJUDICE**.

Dated: February 23, 2026                          *s/ Dulce J. Foster*
                                             Dulce J. Foster
                                             United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. For the reasons previously stated, Respondents must file any objection to this Report and Recommendation on or before February 25, 2026. Petitioner may file a response to any objections on or before February 26, 2026.