# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Juan C.R.R.,

<table>
<tr><td>Petitioner,</td><td><strong>ORDER ADOPTING REPORT AND<br>RECOMMENDATION WITH</strong></td></tr>
<tr><td>v.</td><td><strong>MODIFICATION AND<br>GRANTING WRIT OF HABEAS</strong></td></tr>
<tr><td>Pamela Bondi, et al.,</td><td><strong>CORPUS IN PART</strong><br>Civil File No. 26-01282 (MJD/DJF)</td></tr>
<tr><td>Respondents.</td><td></td></tr>
</table>

Laura Matson, Brian D. Clark, Nash Bundy Edgerton Hall, Lockridge Grindal Nauen PLLP, Counsel for Petitioner.

David W. Fuller, David R. Hackworthy, Assistant United States Attorneys, Counsel for Respondents.

The above-entitled matter comes before the Court upon the Report and Recommendation of United States Magistrate Judge Dulce J. Foster dated February 23, 2026. [Doc. 15.] Respondents filed objections to the Report and Recommendation ("R&R"), and Petitioner responded to such objections. [Doc. 16; Doc. 17.] Pursuant to statute, the Court conducted a de novo review upon the record. 28 U.S.C. §636(b)(1); D. Minn. LR 72.2(b). Based upon that review, the Court adopts with modification the Report and Recommendation of Magistrate Judge Dulce J. Foster.

## I.     Objections

### A.  Mandatory Detention under 8 U.S.C. § 1225(b)(2)

Respondents object to the R&R's determination that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). As the R&R points out, Respondents did not, by any means, fully and adequately brief the argument that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) in their initial response to the petition. [Doc. 15 at 4.] Yet, in their objection to the R&R, Respondents attempt to restate that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) by arguing that "this case is different" from the many cases filed interpreting 8 U.S.C. § 1225(b)(2). [Doc. 16 at 1.] The assertion that this case is somehow "different" seems to rely on the fact that Petitioner was paroled after entering the United States and the fact that he is currently seeking asylum. [See Doc. 16 at 1–2.]

However, this Court, along with countless others in the District of Minnesota, have already rejected these same arguments time and time again. See e.g., Denis C.G. v. Pamela Bondi, et al., Civ. No. 26-cv-01202 (MJD/LIB) (February 13, 2026 Order) ("such argument that [Petitioner's] brief detention and subsequent release on his own recognizance is somehow materially distinct

based on this fact alone fails to persuade this Court."); Mahamed C.A. v. Noem, No. 25-CV-4551 (MJD/JFD), 2025 WL 3771299, at *3 (D. Minn. Dec. 16, 2025), R&R adopted sub nom. Awaale v. Noem, No. 25-04551(MJD/JFD), 2025 WL 3754012 (D. Minn. Dec. 29, 2025) (rejecting the argument that asylum seekers are "seeking admission" for purposes of mandatory detention under § 1225); see also Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *2 (D. Minn. Jan. 20, 2026); Andres R.E. v. Bondi, No. 25-CV-3946 (NEB/DLM), 2025 WL 3146312, at *3 (D. Minn. Nov. 4, 2025) (collecting cases). Considering this same argument has been considered and rejected, this objection is overruled.

## B. Procedural Due Process Violation

Magistrate Judge Foster determined after comprehensive analysis that Petitioner is subject to mandatory detention under the 8 U.S.C. 1226(c), the Laken Riley Act ("the Act"). [Doc. 15 at 5–8] The Act mandates detention of a noncitizen who 1) is deemed inadmissible under 8 U.S.C. 1182(a)(6)(A), (6)(C), or (7), and 2) who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious injury to another person."

3

[See 8 U.S.C. 1226(c)(1)(E) (emphasis added).] Magistrate Judge Foster

considered both requirements and ultimately determined that Petitioner's

immigration status, as well as the charges pending against him, subject him to

mandatory detention under both requirements of the Act. [See Doc. 15 at 5–8.]

While Magistrate Judge Foster determined that Petitioner's criminal

charges subject him to mandatory detention under the Act, she ultimately

recommends the Court grant Petitioner a bond hearing because his continued

detention without such hearing violates his procedural due process rights. [Doc.

15 at 9–15.]

Respondents offer several objections to such determination. First,

Respondents object to Magistrate Judge Foster's characterization of Petitioner as

"lawfully present in the United States." [Doc. 16 at 2.] Second, Respondents

argue that "each of the cases cited by the [R&R] is distinguishable" from the

Petitioner's circumstances. [Doc. 16 at 2–3.] Third, Respondents assert that the

R&R misstates Petitioner's detention as "indefinite." [Doc. 16 at 3.]

### 1.    Petitioner's Lawful Presence in the United States

As stated, Respondents object to the R&R's recommendation that

Petitioner's continued detention without a bond hearing violates his

constitutional right to procedural due process, in part, because Magistrate Judge Foster erroneously determined that Petitioner is "lawfully present in the United States." [Doc. 15 at 9; Doc. 16 at 2.] Respondents argue that he is not lawfully present because he is "paroled to seek asylum," a status he has not yet achieved. [Doc. 16 at 2.]

Respondents' objection on this basis can be easily rejected. Petitioner here was paroled specifically to seek asylum, a fact the Respondents admit. [See id.] Being paroled constitutes "lawful presence" because it is effectively permission to remain in the United States subject to certain conditions. See United States v. Balde, 943 F.3d 73, 84 (2d Cir. 2019) ("parolees' physical presence within the United States cannot be said to be unlawful or illegal because it is authorized by the Attorney General, and parole has long been understood to constitute lawful status."). Further, Petitioner was granted a work permit that does not expire until July 2026. [Doc. 1 at 3.]

Simply put, Respondents cannot concede that Petitioner was paroled into the United States and authorized to work through July 2026 while simultaneously insisting that he is not lawfully present; their attempt to

5

recharacterize his authorized parole as unlawful presence is unavailing and does not undermine the R&R's due process analysis.  This objection is overruled.

### 2.    The R&R's Reliance on "Distinguishable" Cases

Respondents also take issue with the R&R's citation to other courts that have similarly found the Laken Riley Act ("the Act") violates the Due Process Clause to the extent it mandates detention based on criminal accusations as opposed to criminal convictions. [Doc. 16 at 2–3.] The Respondents state that "each of the cases cited by the [R&R] is distinguishable from the case here." [Id. at 2.]

Respondents' objection to the R&R's citation of other courts' discussions of similar due process concerns with the Act is unpersuasive.  As an initial matter, the Act is a newly enacted statute and the constitutional question presented here appears to be one of first impression in the District of Minnesota.  In that context, it is entirely appropriate for Magistrate Judge Foster to consider how other courts have analyzed similar due process challenges.

Respondents' assertion that the cited cases are "distinguishable" does not undermine the analysis.  Magistrate Judge Foster's R&R cited these decisions not as binding precedents that are dispositive to the matter here, but as persuasive

examples illustrating that constitutional concerns over denying bond hearings to noncitizens who are merely charged with, but have not been convicted of, crimes have likewise been raised elsewhere.  Magistrate Judge Foster's R&R contains an extensive, well researched, and well-reasoned independent examination into the governing Mathews v. Eldridge procedural due process analysis. [See Doc. 15 at 9–15 (applying the Mathews v. Eldridge, 424 U.S. 319 (1976) due process balancing test to the facts of this case).] The discussion of other courts' decisions cited after this analysis was completed served only to demonstrate that the reasoning adopted in the R&R was consistent with emerging judicial consideration of comparable situations. [Doc. 15 at 15.] Respondents' disagreement with the persuasive weight afforded to analogous case law without proffering any other authority – binding or persuasive – hardly constitutes a valid basis to reject Magistrate Judge Foster's comprehensive analysis, review of case law, and ultimate recommendation. [See Doc. 15 at 9–17.]

This Court shares Magistrate Judge Foster's concern for DHS's use of unchecked, extensive detention authority based solely on a noncitizen's unproven criminal charges.  Such practice is deeply troubling against the backdrop of Operation Metro Surge, where ICE agents swept across the Twin

Cities and beyond, levying similar charges against noncitizens and later dismissing them. See, e.g., Longworth, N., North Minneapolis ICE shooting: DOJ dismisses charges against Venezuelan men, Fox9 (Feb. 12, 2026), https://www.fox9.com/news/north-minneapolis-ice-shooting-doj-dismisses-charges-venezuelan-men-feb-12-2026.  ICE's immigration enforcement actions have raised serious concerns about the reliability of criminal charges lodged against noncitizens.  Such actions compel the Court to closely scrutinize, and reject where appropriate, potential detention practices that rest on "dubious allegations."  [See Doc. 15 at 13.]

Given these concerns and the risks of unjustified deprivation of liberty, the Court ultimately agrees with Magistrate Judge Foster and concludes that mandatory detention violates Petitioner's Procedural Due Process rights under the Fifth Amendment. This objection is overruled.

### 3.      Petitioner's Detention is not "Indefinite"

Respondents also claim that the R&R misstates Petitioner's detention as "indefinite," when in reality, "his detention will . . . end after final adjudication of his [asylum] application." [Doc. 16 at 3.]

This objection frankly confuses the Court because it appears to conflate the argument that Petitioner is subject to mandatory detention under the Act with the argument that Petitioner is subject to mandatory detention based on his pending asylum application. To the extent that Respondents are arguing the latter, this Court has addressed, and rejected, that argument above. To the extent that Respondent is arguing the former, the Court remains unpersuaded.

Specifically, the Act permits mandatory detention based on the fact that Petitioner has been charged with a crime. Therefore, as Magistrate Judge Foster points out, such statute "would permit Respondents to keep him detained indefinitely, <u>even if he is acquitted of that crime</u> or the government voluntarily dismisses the charges." [Doc. 15 at 14 (emphasis in original).]  Accordingly, Magistrate Judge Foster found that the Act violates the due process clause of the Fifth Amendment to the extent it mandates detention based solely on unproven criminal charges.  (<u>Id.</u> at 15 (gathering cases).)  Therefore, the use of the term "indefinite" and Magistrate Judge Foster's reliance on its meaning is more than appropriate under these circumstances. This objection is overruled.

9

## II.    Remedy

Magistrate Judge Foster ultimately recommends Petitioner receive a bond hearing because the "appropriate cure for [a deprivation of due process] is to provide [Petitioner] with the process he is owed." [Doc. 15 at 15.] This is where the Court departs from Magistrate Judge Foster's recommendation.

The few other cases interpreting the Act have ultimately determined that a bond hearing was the appropriate remedy for the violation of due process. See Doe v. Moniz, 800 F. Supp. 3d 203, 217 (D. Mass. 2025); Veletanga v. Noemi, No. 25-cv-9211 (NSR), 2025 WL 3751865, at *7 (S.D.N.Y. Dec. 26, 2025); S.E. v. Noem, No. 26-cv-00356 (DAD/SCR), 2026 WL 206085, at *3 (E.D. Cal. Jan. 27, 2026); E.C. v. Noem, No. 25-cv-01789 (RFB/BNW), 2025 WL 2916264, at *13 (D. Nev. Oct. 14, 2025).  However, that remedy is not necessary here because Petitioner has already had a bond hearing based on his criminal charges.  At that hearing, Magistrate Judge Foster determined that Petitioner was neither a flight risk nor a danger to the community. [Doc. 15 at 12.] Instead, Magistrate Judge Foster ordered Petitioner released subject to certain conditions. See United States v. Juan Carlos R.R., No. 25-cr-00497 (PAM/ECW) (D. Minn.) (Doc. 15).

While Magistrate Judge Foster reiterated the decision to release Petitioner in the R&R, Respondents have provided no indication that Petitioner's circumstances have materially changed since her conclusion. There is no evidence that Petitioner, if released during the pendency of his criminal proceeding, would suddenly present a flight risk or some great danger to the community.

Instead, the Court finds that Petitioner has already received the very process that other courts have deemed sufficient to remedy a procedural due process violation. All the Court must do now is enforce the previously made bond determination.

### III.   ORDER

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Court **ADOPTS with modification** the Report and Recommendation of United States Magistrate Judge Foster dated February 23, 2026 **[Doc. 15].**

2. The Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED** as follows:

   a. Respondents are ordered to arrange for the immediate release of Petitioner into Minnesota at a safe time and in a safe place that is

11

communicated at least two (2) hours in advance of Petitioner's counsel;

b. Respondents are ordered to immediately return all Petitioner's personal items that were taken from him when he was detained in substantially the same condition as when the items were taken during his arrest, such as his driver's license, immigration papers, passport, cell phone, and keys; and

c. Respondents are enjoined from imposing any conditions on Petitioner's release other than the conditions contained within his preexisting Order Setting Conditions of Release pursuant to United States v. Juan Carlos R.R., No. 25-cr-00497 (PAM/ECW) (D. Minn.) (Doc. 15); and

d. Respondents are enjoined from re-detaining Petitioner under the same statutory theory that has been rejected in this Order.

3. Respondents are ordered to confirm Petitioner's release from custody as well as the Respondents' compliance with the rest of the Court's Order within forty-eight (48) hours from the date of this Order;

4. Any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within 21 days of entry of judgment in this matter, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 17, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court

12